IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RICHARD BILIK,

      Plaintiff,

vs.                                      No. 17−cv−00142−DRH

WEXFORD HEALTH SOURCES,
INC.,
ILLINOIS DEPARTMENT OF
CORRECTIONS,
MICHAEL SCOTT,
CHRISTINE BROWN,
DAVID WHITE,
JOHN R. BALDWIN,
JACQUELINE LASHBROOK, and
JANE DOE NURSES 1-5

      Defendants.

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

      Plaintiff Richard Bilik, an inmate in Pickneyville Correctional Center, brings this action for the deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983.  Plaintiff requests injunctive relief and damages.  This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

      (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Complaint

Plaintiff alleges that prior to his incarceration in the Illinois Department of Corrections (IDOC), he was seen by a dermatologist at Stroger Hospital at Cook County Jail. (Doc. 1 at 27). The dermatologist removed a cyst from the crown of his head, and then scheduled him for an ultrasound to determine why the cyst

site was filing up with fluid. *Id.* However, since that time, Plaintiff has been denied his follow-up ultrasound and other treatment for his cyst. *Id.* Plaintiff suffers continual pain from the cyst. *Id.* He also alleges that he is balding as a result of the cyst. (Doc. 1 at 22).

Plaintiff was incarcerated at Menard Correctional Center from June 2013 until February 2, 2016. (Doc. 1 at 21). Plaintiff has been incarcerated at Pickneyville Correctional Center since February 2, 2016. (Doc. 1 at 22). Although Plaintiff has alleged that the events giving rise to this lawsuit occurred at both Menard and Pickneyville, (Doc. 1 at 23), he has not named any defendants that work at Menard, and so the Court will only consider Plaintiff's claims arising out of Pickneyville.

Plaintiff has alleged that Michael Scott, the medical director at Pickneyville refused to see Plaintiff for his complaints regarding the cyst or provide any medical attention for the cyst since February 2016. (Doc. 1 at 25). He has further alleged that Jane Doe nurses 1-5 refused to adequately document Plaintiff's complaints regarding the cyst. (Doc. 1 at 25). Christine Brown, Dave White, John Baldwin, and Jacqueline Lashbrook all allegedly knew about the cyst and the lack of treatment through oral complaints and grievances and failed to intervene to ensure Plaintiff received proper medical treatment. (Doc. 1 at 26). Plaintiff alleges that the IDOC's policies "permitted this claim to exist." (Doc. 1 at 29). Plaintiff also alleges that all Defendants denied him treatment in retaliation for grievances that Plaintiff had filed. *Id.* Finally, Plaintiff alleges that Wexford

has a cost-saving policy that has limited Plaintiff's ability to secure treatment for his cyst. (Doc. 1 at 30).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 4 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review:

> **Count 1 –** Michael Scott, Christine Brown, David White, John R. Baldwin, Jacqueline Lashbrook, and Jane Does 1-5 were deliberately indifferent to Plaintiff's cyst when they refused him treatment or otherwise condoned the refusal of treatment in violation of the Eighth Amendment;

> **Count 2 –** Wexford Health Sources, Inc., the Illinois Department of Corrections, and John Baldwin had an unconstitutional policy or custom that caused Plaintiff harm in violation of the Eighth Amendment;

> **Count 3 –** Michael Scott, Christine Brown, David White, John R. Baldwin, Jacqueline Lashbrook, and Jane Does 1-5 retaliated against Plaintiff for filing grievances by denying him medical treatment in violation of the First Amendment.

Plaintiff has also attempted to bring another Count, but for the reasons explained below, this claim does not survive threshold review.

> **Count 4 –** Wexford Health Sources, Inc., the Illinois Department of Corrections, Michael Scott, Christine Brown, David White, John R. Baldwin, Jacqueline Lashbrook, and Jane Does 1-5 violated Plaintiff's rights under the Americans with Disabilities Act and the Rehabilitation Act.

As to Plaintiff's **Count 1**, in order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an

objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition.  An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain.  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk.  Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994).  The Eight Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).  Deliberate indifference may be shown where medical providers persist in a course of treatment known to be ineffective.  *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005).

Here, although Plaintiff's Complaint is vague, he has plausibly alleged that his cyst, which causes him to suffer continuous pain, constitutes a serious medical need.  He has further alleged that Dr. Scott refused to treat the cyst, and that the other individually named defendants knew about the refusal but failed to intervene.  The Seventh Circuit has made it clear that the grievance process can

be a basis for liability in a deliberate indifference claim, and so the Court will permit this case to proceed against both those personally involved and those whose only involvement was responding or failing to respond to grievances, thereby condoning the conduct. *See Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015).

However, the Jane Doe nurses 1- 5 (Unknown Party) must be dismissed from this claim. While a plaintiff may use the "John/Jane Doe" designation to refer to specific individuals whose names are unknown, a plaintiff will run afoul of the pleading standards in *Iqbal* and *Twombly* by merely asserting that groups of medical providers violated his constitutional rights. Plaintiff must make plausible allegations against individuals. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding that a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). When a plaintiff does nothing but state that a group of medical providers harmed him without providing more, all he has done is establish that there is a "sheer possibility" that someone in that group harmed him. That is, Plaintiff may not know the name of individual defendants, but he must describe the "who, what, why, where, and how" that form the basis of the claim against a person. To allow otherwise would be effectively allowing Plaintiff to amend his complaint further at will without review of this Court, a result contrary to both the local rules and § 1915A. Because the Complaint neither

sufficiently describes the unknown defendants nor their conduct, Plaintiff could potentially bring claims that would not pass threshold review if they had been properly described.

Plaintiff's sole allegation against the nurses is also internally inconsistent. Plaintiff alleges that the nurses "all refuse to document such complaints over a span of one year.  Plaintiff was told to show Dr. Scott the cysts upon their referral(s) but Plaintiff was only seen early on and denied further treatment altogether."  (Doc. 1 at 25).  It is not clear what the nurses should have been documenting, or if Plaintiff's expectation that they document the cyst is reasonable based on the circumstances.  Additionally, if some or all of the nurses referred Plaintiff to the doctor, that is all they are required to do; they cannot be held liable for the actions of the doctor.  As written, the Complaint implies that all of the Jane Doe nurses made referrals.  That would imply that there are no grounds for liability.  If Plaintiff has more facts that would establish liability as to any particular nurse, he may file a motion requesting leave to amend the complaint in order to present those facts.  But for now, Jane Doe nurses 1-5 are **DISMISSED** from this action without prejudice.

Turning now to **Count 2,** a corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right.  *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).  *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity

in a § 1983 action).   Plaintiff alleges several times that Wexford permitted Plaintiff's pain and humiliation.   This kind of statement is far too vague to state a claim for relief.   However, Plaintiff also articulated a deliberate indifference claim against Wexford that he was denied a follow-up appointment with a dermatologist because of Wexford's cost cutting policies.   This claim survives threshold review and Plaintiff will be able to proceed against Wexford on this claim under the Eighth Amendment in **Count 2**.

But Plaintiff's deliberate indifference claims against the IDOC will be **DISMISSED WITH PREJUDICE** because the IDOC is not a proper defendant for damages because it is a state government agency.   The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).   *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same).

Even assuming Plaintiff's *Monell* claim against IDOC is more properly directed at John Baldwin, the acting Director, it would still fail.   Plaintiff states, "as such policies, customs, or practices and rules permitted this claim to exist and for the Plaintiff to be in pain and humiliated against [sic] for years."   (Doc. 1

at 29).  That statement is too vague to support a claim; it is barely a conclusory statement of the controlling law.  Plaintiff must articulate the policy and then make a plausible allegation that such policy or custom is responsible for his harm.  For example, Plaintiff's claim against Wexford is that their cost cutting policies are what restrains the prison doctor from prescribing follow-up treatment or referrals.  A statement that an undefined policy caused his harm is insufficient.  The IDOC and John Baldwin will be **DISMISSED from Count 2 WITH PREJUDICE**.

As to **Count 3**, to succeed on a First Amendment Retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action.  *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).  In the prison context, where an inmate is alleging retaliation, it is not enough to simply state the cause of action.  The inmate must identify the reasons that retaliation has been taken, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged on notice of the claim(s).  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  The inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Id.*

**Count 3** will survive as to the named Defendants.  Although Plaintiff's allegations on this point are also vague, he has alleged that he filed grievances regarding Dr. Scott's lack of treatment.  He has also alleged that Defendants Brown, White, Baldwin, and Lashbrook reviewed those grievances and refused to intervene in the conduct.  Although Brown, White, Baldwin, and Lashbrook are not named in the grievances, the Seventh Circuit has stated that a prisoner need not demonstrate that he filed a grievance on a specific defendant to sustain a retaliation claim against that defendant.  *Rasho v. Elyea*, --F.3d--, 2017 WL 892500 at *5 (7th Cir. 2017).  At this stage, retaliation is at least plausible. However, Jane Does 1-5 will be **DISMISSED** without prejudice from this Count, as Plaintiff has not alleged that they were aware of his grievance activity.

**Count 4** must be **DISMISSED** without prejudice.  Plaintiff alleges that Defendants Scott, Brown, White, Baldwin, Jane Does 1-5 and Lashbrook violated the ADA and RA, although he does not identify the program or services of which he was allegedly deprived in violation of the acts.

The Supreme Court has held that the ADA applies to prisons.  In *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998), the Supreme Court held: "State prisons fall squarely within the statutory definition of 'public entity'. . . . The text of the ADA provides no basis for distinguishing these programs, services, and activities from those provided by public entities that are not prisons."  *Id.* at 210. The Court further held in *U.S. v. Georgia*, 546 U.S. 151 (2006), that an inmate may bring a private cause of action for damages pursuant to Title II of the ADA if

the state actor's conduct also violates the Eighth Amendment.   A plaintiff's inability to establish a constitutional violation forecloses an ADA private cause of action.   *See Morris v. Kingston*, 368 F. App'x 686 (7th Cir. 2010).

"In order to make out a prima facie case of discrimination under both the ADA and the RA, a plaintiff must show:  (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability.   *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005).   The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal financial assistance, which all prisons do.

The term "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such an individual."   42 U.S.C. § 12102(1).   Major life activities "include but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102 (2). Plaintiff has not alleged that his cyst impairs one or more major life activities.  He has not identified any prison program or activity that he was excluded from as a result of the cyst.   In fact, he has done nothing more than include the words: "pursuant to . . . the Rehabilitation Act and Americans with Disability Act" in his

Complaint (Doc. 1 at 21). This is plainly insufficient to state a claim. Plaintiff's claim pursuant to the ADA and RA will be **DISMISSED** without prejudice.

The Court notes that Plaintiff has another deliberate indifference case pending in this Court that alleges he suffered from other medical conditions during the same time period. If the harms stemming from Plaintiff's other case are indistinguishable from the harms he allegedly suffered in this case, Plaintiff may be entitled to only one recovery.

Additionally, Plaintiff has named all Defendants in their official and individual capacities. But individuals are not "persons" in their official capacities under § 1983 for the purposes of this suit. Plaintiff can only bring claims against individuals that were personally involved in the deprivation of which he complains. There is no supervisory liability in a § 1983 action; thus to be held individually liable, a defendant must be "'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Therefore, to the extent that Plaintiff has attempted to bring claims against any defendant in their official capacity, those claims must be **DISMISSED**, with one exception.

The only time it is appropriate to name a defendant in his or her official capacity is when a plaintiff seeks injunctive relief. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). In that case, a plaintiff need not allege any specific involvement and it is irrelevant whether the party participated in the alleged

violations.  *Id.* (citing *Houston v. Sheahan*, 62 F.3d 902, 903 (7th Cir. 1995); *Ogden v. United States*, 758 F.2d 1168, 1177 (7th Cir. 1985)).  Plaintiff has named Jacqueline Lashbrook as a defendant here in her role as Warden of Pickneyville, but Lashbrook is no longer serving in that capacity.  The Clerk is therefore directed to add Karen Jaimet, the current Acting Warden of Pickneyville, as a defendant in her official capacity only because Plaintiff has requested injunctive relief.  All other official capacity claims against the individual defendants are **DISMISSED**.

A final note regarding Plaintiff's request for injunctive relief: The Court has interpreted this to mean injunctive relief at the close of this case.  If Plaintiff believes that he is entitled to a preliminary injunction, he should file a motion with the Court requesting that relief explicitly.

## Conclusion

**IT IS HEREBY ORDERED** that **Counts 1-3** survive threshold review. However, Baldwin and the IDOC will be **DISMISSED** from **Count 2** with prejudice.  Baldwin remains a Defendant in Counts 1 and 3.  Jane Doe Nurses 1-5 (Unknown Party) are **DISMISSED** from this case without prejudice.  **Count 4** is **DISMISSED without prejudice**.  IDOC is dismissed from this case without prejudice to Plaintiff re-pleading **Count 4**.  The Clerk of Court is **DIRECTED** to add Karen Jaimet as a Defendant.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Wexford Health Sources Inc., Michael Scott, Christine Brown, David White, John

R. Baldwin, and Karen Jaimet:   (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.   If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.   This information shall be used only for sending the forms as directed above or for formally effecting service.   Any documentation of the address shall be retained only by the Clerk.   Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.   Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.   Any paper received by a district judge or magistrate judge that has not been filed with the

Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1)

Finally, Plaintiff is also **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

      **IT IS SO ORDERED**.

      Signed this 16th day of March, 2017.

Digitally signed by Judge David R. Herndon
Date: 2017.03.16 12:46:22 -05'00'

**UNITED STATES DISTRICT JUDGE**