IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RICHARD BILIK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 17-cv-142-SMY |
| ) | |
| **WEXFORD HEALTH SOURCES, DR.** ) | |
| **MICHAEL SCOTT, CHRISTINE** ) | |
| **BROWN, DAVID WHITE, JOHN R.** ) | |
| **BALDWIN, JACQUELINE** ) | |
| **LASHBROOK, and KAREN JAIMET,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge**

Plaintiff Richard Bilik, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Pinckneyville Correctional Center. Defendants are various physicians, medical staff, and administrators employed by IDOC and its medical services contractor, Wexford Health Sources, Inc. ("Wexford").

Bilik asserts an Eighth Amendment deliberate indifference claim against Defendants for allegedly denying medical treatment related to a cyst on the crown of his head (Doc. 3). He also claims that Defendants Baldwin, Brown, Jaimet, Lashbrook, White, and Dr. Scott retaliated against him for filing grievances in violation of the First Amendment. *Id.* Lastly, Bilik claims that Wexford, IDOC, and John Baldwin (the director of IDOC) had an unconstitutional cost cutting policy or custom that caused Plaintiff harm in violation of the Eighth Amendment. *Id.*

Now pending before the Court are Defendants' Motions for Summary Judgement (Docs.

124, 126, 128) and Plaintiff's responses (Docs. 146, 147, 148). For the following reasons, Defendants' motions are **GRANTED**.

## Factual Background

The following relevant facts are undisputed unless otherwise indicated: Bilik has been an inmate at Pinckneyville Correctional Center since February 2, 2016 (Doc. 3). In December 2006, a cyst was first noted to be present on his scalp. The lump was again noted in 2010 and 2011 (Doc. 132-10 at 5, 11-12). Sometime between 2009 and 2012, Bilik was diagnosed with traumatic brain injury (TBI) (Doc. 131-4 at 12). The TBI resulted from two car accidents where Bilik went through the windshields, being hit by a bat, and experiencing fights and beatings as a child. *Id.*; 132-10 at 2. Doctors informed Bilik that his TBI could cause head pain (Doc. 131-4 at 12). He suffers from chronic back pain and migraine headaches, as well. *Id.*; 132-10 at 6-7. He takes several different medications to alleviate his pain (Doc. 132-11 at 7-8).

In 2012, Bilik saw Dr. Mona Gandhi, a dermatologist, at Stroger Hospital at Cook County Jail who removed a Pilar Cyst from the crown of his head. But the cyst grew back. Dr. Gandhi scheduled an ultrasound to determine why the cyst site was filling with fluid (Doc. 1 at 27). Bilik claims he has been denied a follow-up ultrasound and other treatment for his cyst. *Id.* He alleges he suffers chronic pain and is balding because of the cyst. *Id.* at 22.

Bilik was incarcerated in four other prisons prior to arriving at Pinckneyville, but never received treatment for his cyst. His IDOC medical record indicates that he reported complaints regarding his cyst five out of the 66 times he visited a health care unit ("HCU") between October 2012 to June 2018 (Doc. 132-12 at 64-65, 69-71, 78, 80, 89). All five appointments occurred prior to his transfer to Pinckneyville on February 2, 2016.

Bilik alleges that Defendant Dr. Scott, the medical director at Pinckneyville, refused to see

him regarding the cyst or to provide any medical attention for the cyst (Doc. 1 at 25). Dr. Scott treated Bilik from approximately April 7, 2016 to November 18, 2016 (Doc. 131-4 at 6-8). He saw Bilik five times for chronic back pain, migraine headaches, and review of prescriptions (Doc. 132-12 at 102, 109, 131, 137). On his last patient visit in November 2016, Dr. Scott conducted an objective examination and noted that Bilik's head, neck, face, and scalp were normal and atraumatic. *Id.* at 40-41. He asserts that Bilik never complained about pain from the cyst to him, which is reflected in the medical records. (Doc. 131-4 at 6-8). No doctor (including Dr. Gandhi) has told Bilik he needs a second excision or procedure for his cyst (Doc. 132-4 at 21, 52).

Bilik filed several grievances at Pinckneyville concerning the alleged denial of medical care. Three grievances specifically mentioned his cyst—April 24, 2016, September 9, 2016, and October 24, 2016. His April 24, 2016 grievance recounted the history of his cyst and noted complaints of pain and balding (Doc. 131-2 at 7-8). The Administrative Review Board ("ARB") concluded the grievance failed to comply with "Department Rule 501.810."[1]

In his September 9, 2016 grievance, Bilik complained about Dr. Scott discontinuing his pain medication and denial of treatment for his cyst; the record lacks a response for this grievance (Doc. 146-2; Doc. 132-4 at 33).

In his October 24, 2016 grievance, Bilik complained of a painful cyst, which Defendant Lashbrook reviewed and expedited as an emergency grievance (Doc. 131-2 at 1-2). Defendant Brown, the healthcare administrator at Pinckneyville, reported that Bilik was seen in the HCU on September 23, 2016 and September 28, 2016 but was not referred to Dr. Scott on either visit (Doc. 131-1 at 36-37). Brown alleges that Bilik never complained of pain during his September 28, 2016

---

[1] Inmates are required to submit grievances within 60 days of the incident or occurrence they are grieving. *See* 20 ILL. ADMIN. CODE § 504.810(a). Presumably, the ARB denied relief because Bilik's grievance included only dates from 2012 and 2013.

visit to the HCU but requested to see a mental health professional. *Id.* at 36-37. It was recommended that Bilik's October 2016 grievance be denied, and Lashbrook concurred. After speaking with Brown and reviewing the record, Defendant White[2] determined that Bilik's cyst was not causing pain; rather, it was a cosmetic issue that did not require removal. *Id.* at 36. The grievance was ruled unmeritorious, and no action was taken.[3] *Id.*

On June 22, 2018, Dr. Matticks, a Wexford Regional Medical Director, saw Bilik as a patient (Doc. 132-9 at 3-4). Dr. Matticks examined his cyst and ordered a dermatology consult for removal. *Id.*; Doc. 132-12 at 11-12. Wexford approved Dr. Matticks' request. Bilik visited a dermatologist, a general surgeon, and finally a plastic surgeon who removed his cyst on December 12, 2018 (Docs. 132-13, 132-14, 132-15).

## **Discussion**

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue as to any material fact or where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).

---

[2] Defendant David White is an ARB chairperson.
[3] Bilik testified that he sued Defendants Baldwin and White because they signed grievance documents denying him medical treatment for his cyst (Doc. 132-4 at 48-49, 51). He also stated that Warden Lashbrook never retaliated against him for filing grievances, only that she denied his grievances for medical treatment (Doc. 132-4 at 54). He has admitted that Defendants White and Brown never retaliated against him for engaging in activity protected by the First Amendment (Doc. 131-33 at 3; Doc. 131-34 at 3).

### Count 1: Deliberate Indifference

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment and is actionable under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To succeed on such a claim, a plaintiff must establish that he suffered from an objectively serious medical condition and that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

Here, Bilik's cyst constitutes a serious medical condition. He suffered from a cyst on his head for years that caused him chronic pain. Several prison doctors examined him, determined that the cyst was a condition mandating treatment, and repeatedly prescribed pain-relieving medications. However, the evidence fails to support Bilik's claim that Defendants were deliberately indifferent to his condition.

Bilik argues that despite his numerous complaints and grievances, Defendants delayed or denied him proper medical treatment, including denying him a follow-up ultrasound appointment or ordering removal of his cyst. Before the filing of this lawsuit, Dr. Scott never saw Bilik's grievances that mention the apparent lack of care for his cyst. And none of Bilik's Pinckneyville medical records indicate he complained of pain from his cyst to Dr. Scott. Dr. Scott examined Bilik several times and prescribed several medications to treat his pain. Thus, Bilik's claim that Dr. Scott ignored his suffering is unsupportable on the record.

Bilik also fails to establish that Dr. Scott's treatment deviated from accepted professional

judgment, practice, or standards such that it amounts to deliberate indifference. Dr. Scott did not perceive any problem with Bilik's cyst while treating him at Pinckneyville. In his undisputed Declaration, he explains that Pilar Cysts are often harmless and do not necessarily require removal. Because some Pilar Cysts may disappear or reappear in the same location, the applicable medical standard is a "wait and see" approach. He therefore determined that there was no medical necessity to require a diagnostic ultrasound, a specialist referral, or removal of Bilik's cyst. Moreover, Bilik has seen numerous doctors since 2012 – none of which concluded that his cyst required removal. Rather, like Dr. Scott, they all prescribed only pain relief medication for treatment. Although Bilik may feel that Dr. Scott's treatment was lacking and that he should have referred him for surgery, the Eighth Amendment does not entitle prisoners to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

With respect to Bilik's claim against Christine Brown, the healthcare unit administrator, while he admits that he never personally interacted with her, he believes she is responsible for his lack of medical treatment because she manages the healthcare unit. Even assuming that Brown was aware of his condition (there is no evidence that she was), Brown had no power or authority to order specific treatment for Bilik's cyst. And she refilled his prescription medication when she was informed that he needed a refill. There is simply no evidence to support Bilik's claim that she disregarded his complaints regarding pain and prescriptions. As such, no reasonable jury could find that Brown was deliberately indifferent to his medical needs.

Likewise, Bilik cannot show that the non-medical defendants—White, Baldwin, Lashbrook, and Jaimet—were deliberately indifferent to his cyst. If a prisoner is under the care of prison medical professionals, a non-medical prison official "will generally be justified in believing

that the prisoner is in capable hands." *Giles v Godinez*, 914 F.3d 1040, 1049-50 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).  That said, a prison official may be found to be deliberately indifferent to a prisoner's serious medical needs if "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008).  In this case, Defendants White, Baldwin, Lashbrook, and Jaimet became aware of Bilik's cyst through his grievances.  Believing they had the authority to order a consultation even without a doctor's order, Bilik accuses these defendants of ignoring his constant pain and refusing to take him to a dermatologist for consultation.

Each of these defendants reviewed Bilik's medical records and noted that he was being seen by nurses and Dr. Scott and had received multiple prescriptions to manage his pain.  Under the circumstances, they reasonably relied on Defendants Brown and Dr. Scott's medical judgment and treatment of Bilik and were not deliberately indifferent to his medical condition.

Accordingly, Defendants are entitled to summary judgment as to Count 1.

### Count 2: Unconstitutional Policy or Custom

Bilik's claim that Wexford employed an unconstitutional cost-cutting policy of refusing to send prisoners to offsite doctors also fails as a matter of law.  To prevail on this claim, Bilik must provide evidence that Wexford acted pursuant to an unconstitutional official policy or custom, and that the policy was the moving force behind the constitutional violation. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691-95 (1978)).  A plaintiff may prove an unlawful custom or widespread policy by demonstrating that the challenged practice "'was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision.'" *Dixon v. County of Cook*, 604 F.3d 343, 348 (7th Cir. 2016).  He "can meet this burden by offering 'competent evidence

tending to show a general pattern of repeated behavior (i.e., something greater than a mere isolated event).'" *Daniel v. Cook Cty.*, 833 F.3d 728, 734 (7th Cir. 2016) (quoting *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006)). In other words, he must "show more than the deficiencies specific to his own experience" and bring forth "evidence that could allow a reasonable trier of fact to find ... 'systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical system,'" of which the policy maker or official was aware but failed to correct. *Id.* at 734-35 (citations omitted).

      Bilik has provided no evidence pointing to an official unconstitutional policy. He relies primarily on conclusions reached by experts in *Lippert v. Godinez*, 10-cv-4603 to demonstrate that Wexford has a custom or practice of failing to monitor physician care and patients are not consistently referred for specialty care when it is warranted (Doc. 148 at 9). However, this Court joins various other district courts and the Seventh Circuit in excluding the Lippert Report from consideration as inadmissible hearsay. *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 522 (7th Cir. 2019); *Bradford v. Wexford Health Sources, Inc.*, No. 16 C 8112, 2020 WL 586810 (N.D. Ill. Feb. 6, 2020) (collecting cases and finding plaintiff failed to show that he could present the Lippert Report's contents in some admissible form at trial).

Bilik also offers his own experience as evidence of Wexford's custom of denying specialist referrals. But his singular experience is insufficient to support a *Monell* claim. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 796 (7th Cir. 2014). Evidence that there may have been a denial or delay in the treatment, in-and-of-itself, is insufficient to demonstrate that there is an unconstitutional policy that was the driving force behind a constitutional violation. *Grieveson v. Anderson*, 538 F.3d. 763, 774 (7th Cir. 2008) (noting that while an inmate's personal experience of repeated actions may be sufficient to establish an unconstitutional policy, "what is needed is

evidence that there is a true municipal [or corporate] policy at issue, not a random event." (internal quotations omitted)).  For these reasons, Defendants are entitled to summary judgment on Count 2.

### Count 3: Retaliation

A prison official who acts in retaliation for a prisoner's exercise of a constitutional right violates the Constitution.  *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).  To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was a motivating reason for defendant's actions.  *See Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Bilik contends that Defendants Dr. Scott, Brown, White, Baldwin, Lashbrook, and Jaimet retaliated against him for filing grievances by denying him medical treatment in violation of the First Amendment.

Bilik filed approximately 364 grievances at Pinckneyville in 2016 (Doc. 132-4 at 54).  The record shows that the Defendants conducted an independent review and relied Dr. Scott's medical judgment and treatment when denying Bilik's grievance.  And after reviewing Bilik's medical record and consulting with Defendant Brown, Defendant White determined that the cyst was a cosmetic issue that did not require removal.  Bilik's claim that his history as an "avid grievance writer" influenced the Defendants' decision is speculation unsupported by the record in this case. Additionally, Bilik concedes that Defendants Lashbrook, Brown, and White did not retaliate against him while housed at Pinckneyville (Doc. 131-33 at 3; Doc. 131-34 at 3; Doc. 132-4 at 54). While he asserts that Defendant Lashbrook retaliated against him when she tore up his cell and "told [him] not to file any more grievances" (Doc. 132-4 at 54; Doc. 146 at 24), those events

allegedly occurred at Menard Correctional Facility and are subject to a separate lawsuit (Doc. 132-4 at 54).

Bilik also testified that he is suing Warden Jaimet because she "signed off" on his grievance denials but did not mention any acts of retaliation she committed against him. *Id.* at 49, 51, 55. Similarly, Bilik alleges Defendant Baldwin approved his grievance denials, but he has made no mention of specific acts of retaliation that Baldwin took. Simply put, his deposition testimony does not establish a link between any grievance and Defendants' actions.

Lastly, Bilik alleges that Dr. Scott denied him medical care, also in retaliation for filing grievances against him. Because Dr. Scott had no knowledge of Bilik's grievances, he could not have been motivated to deny medical care in response. Bilik does not dispute this (Doc. 147 at 27).

Accordingly, the Defendants are entitled to judgment on Bilik's retaliation claims.

## Conclusion

For the foregoing reasons, Defendants' Motions for Summary Judgment (Docs. 124, 126, 128) are **GRANTED**. All pending motions are **TERMINATED as moot**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

DATED: September 23, 2021

2021.09.23
15:48:19 -05'00'

**STACI M. YANDLE**
**United States District Judge**